IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE DORN, IDOC # B66720, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 11-191-GPM |
| | ) |
| MARVIN POWERS, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Tyrone Dorn, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who currently is incarcerated in the closed maximum security prison at the Tamms Correctional Center ("Tamms C-Max"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by persons acting under color of state law. This case is before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

> (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Though the Court is obligated to accept factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Also, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

According to the allegations of Dorn's pro se complaint, at an unspecified time in the past, while Dorn was a prisoner in Tamms C-Max, Dorn believes that he contracted dysentery from dirty water and rotten food served to him by IDOC.[1] Dorn's family, concerned about Dorn's health, sought to have Dorn examined by a doctor from outside Tamms C-Max, but this effort allegedly was blocked by Defendant Terry Caliper, a health care administrator at Tamms C-Max. Subsequently, Dorn was examined by Defendant Marvin Powers, a physician at Tamms C-Max, who prescribed Zantac to Dorn for Dorn's gastrointestinal condition. Apparently, the Zantac was ineffective to treat

---

1. This perhaps is the place to note that Dorn's pro se complaint is an extremely prolix document of thirty-five pages, written in crabbed, occasionally unreadable handwriting, and therefore obviously is not the "short and plain statement" of Dorn's claim for relief mandated by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2). *See also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) ("A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.").

Dorn's condition, whereupon Powers offered to perform an examination of Dorn's rectum. Dorn, feeling belittled by Powers, rejected the offer and instead returned to his cell; as Dorn was being escorted to his cell, two unknown prison guards mocked Dorn in the presence of other prisoners for becoming angry at Powers's offer to examine Dorn's rectum. Dorn filed a grievance concerning the incident involving Powers and the prison guards but, pursuant to what Dorn melodramatically terms the "code of silence" among prison personnel at Tamms C-Max, the grievance was denied. Doc. 1 at 10 ¶ 36. Following Dorn's examination by Powers, Defendant Mary Hill, a nurse at Tamms C-Max, prescribed pepto-bismol to Dorn for his gastrointestinal condition, but the prescription was not filled because there was no pepto-bismol at Tamms C-Max at the time. Dorn's family again sought to have Dorn examined by a physician from outside Tamms C-Max, but these efforts were blocked by Caliper and Defendant Yolande Johnson, the warden of Tamms C-Max, who ordered tests of Dorn's stool instead. Dorn also alleges that Caliper refused to admit Dorn to the infirmary at Tamms C-Max on the grounds that Caliper lacked authority to do so and, in any event, dysentery is only a "third world condition." Doc. 1 at 12 ¶ 41.

On March 13, 2009, Dorn was brought to Herrin Hospital in Herrin, Illinois, where Defendant Sushilkum M. Tibrewala, a physician, diagnosed Dorn as suffering from irritable bowel syndrome. Tibrewala recommended daily medication for Dorn and tests of Dorn's stool, and scheduled Dorn for a follow-up examination on approximately May 12, 2009. Dorn complains that he did not receive the first dose of the medication of the medication prescribed to him by Tibrewala until March 18, 2009. Dorn complains also that on April 11, 2009, Defendant Kathie Butler, a nurse at Tamms C-Max, failed to give Dorn his medication because Dorn was asleep when she brought the medication to Dorn's cell; evidently, it is not the policy at Tamms C-Max to require medical

personnel to awaken sleeping prisoners so that the prisoners can receive medication. Dorn filed a grievance about the incident with Butler that was denied; Dorn complains in particular that Defendant Stacey Williamson, the director of nursing at Tamms C-Max, refused to review video camera footage that, Dorn claims, would have substantiated his grievance against Butler. On May 11, 2009, Dorn's blood pressure was checked. Thereafter, a nurse at Tamms C-Max who is identified only as "Nurse Connie" and who is not a party to this case scheduled Dorn to have his blood pressure checked again the following day. However, the following day Dorn was unable to have his blood pressure checked because Butler falsely told Dorn he had no appointment scheduled that day; apparently Butler had failed to check Dorn's chart. On May 15, 2009, while Dorn was exercising in the exercise yard on his pod at Tamms C-Max, Defendant Grace Hart, a nurse at the prison, came to the yard and tried to induce Dorn to take his medication without water. Dorn refused, as he is supposed to take his medication, which is in powder form, with water to get a full dosage. Hart wrote Dorn down as having refused his medication. On June 13, 2009, Dorn was denied his medication because Powers and Defendant Nigel Nyard, a health care administrator at Tamms C-Max, had allowed Dorn's prescription to lapse. As a result of the lapse, Dorn missed approximately six doses of his medication.

On July 15, 2009, Dorn complains, Johnson, Powers, and Nyard failed to bring Dorn back to Herrin Hospital for a follow-up examination, because the tests of Dorn's stool ordered by Tibrewala had not yet been performed. Dorn filed an emergency grievance that was denied by Johnson, on the advice of Williamson and Defendant Toma Osman, a counselor at Tamms C-Max. Dorn complains generally that Osman, together with Defendants April Moore and Craig Jones, all of whom are grievance counselors at Tamms C-Max, are not impartial and are biased against

prisoners. Dorn's follow-up examination at Herrin Hospital was rescheduled until September 14, 2009. On August 16 and 20, 2009, Defendant Rhonna Meclin-Cook, a nurse at Tamms C-Max, refused Dorn his medication. Dorn wrote grievances and letters to Nyard complaining about Meclin-Cook's denial of his medication, but no action was taken. On August 30, 2009, Defendant Kris Watson, a nurse at Tamms C-Max, refused Dorn his medication. It appears Defendant Derek Richardson, a nurse at Tamms C-Max. may have refused Dorn his medication on other unspecified occasions as well. According to Dorn, the denials of his medication by Meclin-Cook, Watson, and Richardson were instigated by Meclin-Cook. On September 14, 2011, although, as noted, Dorn was scheduled to be brought to Herrin Hospital for a follow-up examination, Dorn was not brought to the hospital as scheduled, whereupon Dorn filed an emergency grievance. Johnson declined to consider the grievance on an emergency basis, so the grievance was forwarded to Jones, who denied the grievance on the grounds that the follow-up examination was only a recommendation by Tibrewala. Dorn claims that the real reason he was not brought to the Herrin Hospital was that the tests ordered by Tibrewala still had not been performed.

On December 2, 2009, Dorn's medication lapsed due to a failure by Powers and Nyard to renew the prescription. On December 12, 2009, Richardson dropped Dorn's medication on the floor, whereupon Dorn refused the medication and filed a grievance about the incident; the grievance was denied. On December 15, 2009, Richardson was again dispensing medication. When Dorn asked Richardson not to try to push the medication through door of Dorn's cell, Richardson became angry and claimed falsely that Dorn had refused his medication. Dorn filed a grievance, which was denied. On December 30, 2009, Meclin-Cook twice refused Dorn his medication on the grounds of

inappropriate behavior by Dorn; Dorn's grievance concerning this incident was denied. On February 2, 2010, Hill brought Dorn what Dorn believes was the wrong medication, a pink capsule rather than a blue pill. Hill tried to cajole Dorn to take the medication then, when Dorn refused, said that she would look into the matter, but did not return. On the next shift, the nurse brought Dorn the correct medication. Dorn filed a grievance in connection with this incident, but the grievance was denied. On November 2 and 3, 2010, Meclin-Cook refused Dorn his medication on grounds of inappropriate behavior, provoking still more unsuccessful grievances by Dorn. On January 30, 2011, Meclin-Cook offered Dorn his medication while he was in the shower. Dorn refused to take his medication in the shower, and Meclin-Cook did not come to Dorn's cell with the medication, causing Dorn to miss a dose of medication. According to Dorn, Meclin-Cook falsely claimed that Dorn had been insolent. Dorn wrote grievances and letters to Nyard and Defendant Robin Dillon, the warden of Tamms C-Max, in connection with the January 30 incident, but the letters and grievances went unanswered. Dorn seeks compensatory and punitive damages against all Defendants in their individual capacities.

      Having related at some length the claims set out in Dorn's complaint, the Court turns to the question of whether any of the conduct alleged by Dorn rises to the level of a violation of his constitutional rights. As an initial matter, the Court notes that Dorn's complaint is largely devoid of specific allegations linking Defendants Michael P. Randle and Gladyse Taylor, both former directors of the IDOC, Defendants Michael Puisis and Louis Shicker, both IDOC medical directors, and Defendant Jackie Miller, the chairperson of the IDOC's administrative review board, to violations of Dorn's constitutional rights. However, 42 U.S.C. § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the

individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Also, Dorn's claims against Randle, Taylor, Puisis, Shicker, and Miller, like his claims against Jones, Moore, and Osman, are premised solely on the conduct of these Defendants in allegedly denying or failing to act on Dorn's grievances concerning the medical treatment he received at Tamms C-Max. However, The United States Court of Appeals for the Seventh Circuit specifically has held that a denial of a prisoner's grievance, even if wrongful, is not a basis for a Section 1983 claim. "Only persons who cause or participate in the violations [of a prisoner's constitutional rights] are responsible [under Section 1983]. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted). Thus, "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id*. at 609-10. Here Dorn is merely challenging the rejection by IDOC personnel of his administrative complaints about completed acts of alleged misconduct by the medical staff at Tamms C-Max. Therefore, Dorn's claims against Randle, Taylor, Puisis, Shicker Miller, Jones, Moore, and Osman will be dismissed.[2]

---

2. Also, to the extent that Dorn is attempting to maintain a claim against Powers allegedly for addressing him in a belittling manner in the course of a medical examination of Dorn, the Court notes in passing that it is well settled that simple verbal harassment, standing alone, does not violate a prisoner's constitutional rights. *See Allen v. Wine*, 297 Fed. Appx. 524, 530 (7th Cir. 2008) (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest, or deny a prisoner equal protection of the laws."); *Antoine v. Uchtman*, 275 Fed. Appx. 539, 541 (7th Cir. 2008) ("[T]he Constitution does not compel [prison personnel] to address prisoners in a civil tone using polite language. Prisons may think it well to control guards' manner of speech, but that is for statutes and regulations (or perhaps the common law) rather than constitutional right.").

The Court turns next to Dorn's claim that medical personnel at Tamms C-Max were deliberately indifferent to his serious medical needs. Concerning claims for denials of medical care by prisoners, it is well settled, of course, that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). As the Seventh Circuit Court of Appeals has instructed, the Eighth Amendment "imposes upon prison officials the duty to 'provide humane conditions of confinement,' including the obligation to provide medical care to those whom [they have] incarcerated." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Thus, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The second requirement demands that the prisoner satisfy a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety[.]" *Id.* (quoting *Wilson*, 501 U.S. at 297). *See also Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Estelle*, 429 U.S. at 104) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"). An objectively serious medical need "is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)) (quotation omitted). With the foregoing standard in mind, the Court turns to consideration of Dorn's claim for deliberate indifference to his medical needs.

Assuming for the sake of argument that irritable bowel syndrome qualifies as a serious medical condition for Eighth Amendment purposes, the conduct described in Dorn's complaint amounts at most to negligence, not deliberate indifference. Deliberate indifference such as rises to the level of a violation of a prisoner's Eighth Amendment rights is "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm[.]" *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (citations omitted). This total disregard for a confined person's safety is "the functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). In this instance, Dorn alleges that when he began to suffer from gastrointestinal distress, he was examined by Powers, who offered to examine Dorn's rectum, that he was prescribed Zantac and pepto-bismol, and that he was brought to Herrin Hospital for examination by a physician who correctly diagnosed Dorn's medical condition. The misconduct alleged by Dorn, e.g., allowing his prescriptions briefly to lapse, neglecting to perform tests as ordered, dropping Dorn's medication on the floor, possibly bringing Dorn the wrong medication, etc., is simply carelessness, as in fact it is characterized in Dorn's complaint.[3] It is well settled, of course, that mere negligence is not a sufficient basis for a claim under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (a "mere lack of due

---

3. See, e.g., page 19 and paragraph fifty-nine of Dorn's complaint, where Dorn alleges that Powers and Nyard failed to order the tests prescribed by Tibrewala because they did not read Dorn's charts.

care by a state official" does not "'deprive' an individual of life, liberty, or property under the Fourteenth Amendment."); *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (in order for a person confined by a state to make out a Section 1983 claim for deliberate indifference to his or her health or safety, negligence or even gross negligence is not enough; rather, the confined person must show actual intent or deliberate indifference on the part of state actors); *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) ("Negligence on the part of an official does not violate the Constitution[.]"); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ("Mere negligence or even gross negligence does not constitute deliberate indifference."). The occasions when Dorn was denied his medication because he was asleep or was behaving inappropriately likewise do not display deliberate indifference. The denial of medication can violate the Eighth Amendment in some circumstances. *See Walker v. Benjamin*, 293 F.3d 1030, 1039 (7th Cir. 2002). However, a prison official does not act "wantonly" when he or she denies a prisoner medication because of the prisoner's misconduct and not out of desire to cause harm. In any event, "isolated instances of neglect" do not show that a prison official acted with deliberate indifference to a prisoner's medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). Additionally, Dorn appears to have suffered no injuries as a result of these occasional denials of his medication. *See Farmer*, 511 U.S. at 837 (to show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference.").[4]

---

4. To the extent Dorn claims that Johnson was deliberately indifferent to his medical needs by, for example, concurring in the opinions of Williamson and other medical personnel at Tamms C-Max concerning Dorn, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands[.]" *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005).

The Court turns finally to Dorn's purported claims against Defendants Tibrewala, Robin Gallo, who apparently is, like Tibrewala, a physician at Herrin Hospital, Lanne Maes, the director of the medical center at the University of Illinois, and Mikhal Magdel, a physician at the University of Illinois medical center. Tibrewala and Gallo treated Dorn; it appears from the complaint that Maes and Magdel were involved in testing Dorn's stool samples. Dorn's novel theory of liability against these persons is that, having become involved in different aspects of his medical treatment, they owed him, Dorn, a duty to ensure that Dorn was not subjected to deliberate indifference by officials at Tamms C-Max. The vast majority of federal courts agree that treatment by a non-contract private physician, nurse, or hospital upon referral or on an emergency basis does not satisfy the requirements for state action necessary to bring a claim under 42 U.S.C. § 1983. *See, e.g., Davis v. Dorsey*, 167 F.3d 411, 412-13 (8th Cir. 1999) (concluding that a district court properly granted summary judgment to a private hospital not under contract to provide medical care to prisoners, as the hospital did not act under color of state law in administering treatment to such prisoners); *Nunez v. Horn*, 72 F. Supp. 2d 24, 27 (N.D.N.Y. 1999) (an orthopedic surgeon who performed surgery at a private hospital on a prisoner pursuant to a referral but absent a contract with the Federal Bureau of Prisons was not an official actor). In this instance, Dorn alleges that Tibrewala, Gallo, Maes, and Magdel were involved in Dorn's medical care pursuant to a contract with the IDOC, a proposition that the Court finds highly dubious but which cannot be resolved, of course, on the pleadings. However, still more to the point, there is nothing in the allegations of the complaint to suggest that Tibrewala, Gallo, Maes, and Magdel had any knowledge of the medical treatment Dorn was receiving at Tamms C-Max or, if that care was deficient, any way of exercising control over Dorn's treatment in the prison. Under these circumstances, Tibrewala, Gallo, Maes, and

Magdel cannot be held liable to Dorn under Section 1983. *See Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) ("A doctor associated with a prison cannot be held responsible for failing to intercede in the treatment of a prisoner simply because the prisoner button-holes him and insists that he do so."); *Wright v. Genovese*, 694 F. Supp. 2d 137, 156 (N.D.N.Y. 2010) (in a case in which a pro se prisoner wrote a letter to his surgeon requesting pain medication and follow-up care, holding that the surgeon could not be made liable under Section 1983 for failing to respond to the plaintiff's letter where the surgeon had no control over whether the staff at the correctional facility where the plaintiff was incarcerated referred prisoners to him for follow-up care and had no authority to override prison officials' determinations about whether to refer a prisoner for treatment). This case will be dismissed.[5]

To conclude, pursuant to 28 U.S.C. § 1915A, the Court finds that Dorn's complaint fails to state a claim upon which relief may be granted. Therefore, this action is **DISMISSED**. Dorn is advised that the dismissal of this case will count as one of his three allotted "strikes" under 28 U.S.C. § 1915(g). The Clerk of Court will enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED: December 30, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge

---

5. To the extent Dorn may be attempting to assert supplemental state-law claims, the Court in its discretion declines to exercise supplemental jurisdiction over such claims. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").